By the Court, E. Darwin Smith, J.
The question presented upon this appeal is, whether the agreement of the defendant found by the referee, to pay the plaintiff the advances made by him in payment and satisfaction of the promissory note of W. W. Gillespie, is or is not a valid agreement. The whole agreement is contained in the instrument in writing, signed by the *625 plaintiff, and delivered to the defendant at the time, as follows:
“Whereas D. A. Gillespie has this day endorsed a note of $400, payable to my order, the object of which is to pay a note of W. W. Gillespie, endorsed by me. How, therefore, in consideration of the premises, I agree to pay the said note when dne, and to receive my pay thereon in groceries at the store of the said D. A. Gillespie, at his cash price, as I may want them, for family use.
September 13, 1870. W. Sawders.”
At the time when this agreement was made, it appears in the evidence, and from the referee’s report, that the promissory note referred to in said agreement, and which the said promissory note then made and endorsed was made to take np, had previously fallen due, was protested for non-payment as against the plaintiff, was sued and put in judgment against the said W. W. Gillespie, and that the judgment creditor' had agreed to receive $61.43 in cash, and the said note of $400 at two months, and discharge such judgment.- The plaintiff paid this $61.43, and the note of $400 was at the same time delivered to Wilkinson, the judgment creditor. Wilkinson had thus received $61.43 of his debt, and a new note from the original parties, with the additional name of the defendant as endorser on the new note for $400. In consideration that the plaintiff would pay this debt at maturity, the defendant agreed to repay him such amount in groceries, out of his store, as he might want them for family use.
The first point made by the defendant’s counsel is, that this agreement was one to pay the debt of W. W. Gillespie, and not being in writing was void by the statute of frauds. This position, I think, is not sustainable. The agreement was not with the original creditor, nor for his benefit; nor did any consideration move *626 from Mm or the debtor for the defendant’s promise. The plaintiff and defendant were both endorsers on this $400 note, and this agreement was between them in respect to their relative liabilities on such note. And I tMnk it is an original and independent agreement between them, and entirely outside of the statute of frauds.
This promise of the defendant is not collateral to the original indebtedness of his brother—does not propose to pay his debt, upon his default, to his creditor. The agreement is, if the plaintiff will pay the note, endorsed by both the plaintiff and the defendant, the defendant will pay him the amount soadvanced.
The case, so far as relates to the statute of frauds, would come within the third classification made by Judge Comstock, in Mallory v. Gillett, (21 N. Y. 417,) ‘ where the promise to pay the debt of another arises out of some new and original consideration of benefit or harm moving between the contracting parties.” And this brings me to the next more important question— whether there was any adequate consideration for this promise.
It appears from the referee’s report, and the evidence, that at the time of the making and endorsing the original note therein referred to, the maker of such ‘note, W. W. Gillespie, was a merchant and trader, and that after the making and endorsement of such note his store and business passed from his hands into the hands of the defendant.
The plaintiff, in his testimony, states that on the 12th of September, the day of the date of said note, he went to the defendant’s store and inquired if the said judgment was going to be paid, and the defendant then asked him if he, the plaintiff, would not pay the judgment and take it in trade. The plaintiff in reply said he had not money enough; if he could get an extension of two months he would do so; and that thereupon he and the maker, W. W. Gillespie, went and saw the *627 Wilkinsons, and made an arrangement with them to take the $61.43 cash, and the new note for $400.
[Fourth Department, General Term, at Rochester,
April 1, 1873.
Mullin, Talcott and E B. D. Smith, Justices.]
These facts, with the endorsement of said note and the making of the agreement to pay the plaintiff, in goods, the amount of his advance, if he would pay said note, seems to imply that at the time of the making of such note and promise, the defendant recognized some moral or equitable obligation or duty on his part to relieve the plaintiff from the payment and ultimate loss of the amount of such note so endorsed by him for his brother. Something of this kind was doubtless the inducement to the promise on his part to pay the amount of such advance, in goods, out of Ms store. This promise, on the part of .the defendant, was the consideration for and doubtless induced the plaintiff to undertake and assume, in the first instance, to pay and discharge the said $400 note, and take up the same with his own funds, thus making Mmself, in effect, the principal debtor on such note, as between him and the defendant, and before he was charged as endorser thereon, and also to accept payment of the amount so to be advanced, in goods from the defendant’s store, as he should need them for family use.
.The plaintiff’s agreement absolutely to take up the said note at maturity is, I think, under the circumstances, a sufficient consideration for the defendant’s promise to reimburse Mm for such payment.
In L' Amoreux v. Gould, (3 SeId. 349,) it was held that an agreement, by an endorser, to take up notes before they were due, and before he was charged as an endorser, was a sufficient consideration to support a promise to pay for the money so advanced.
I think that the judgment in tiffs case was right, and should be affirmed.